FRANK A. DONALDSON AND ANOTHER, EXECUTORS, SUBSTITUTED FOR RUTH CHASE DONALDSON, DECEASED, v. CHASE SECURITIES CORPORATION, NOW KNOWN AS AMEREX HOLDING COMPANY.[1]

December 31, 1943.

No. 33,458.

[1] Reported in 13 N. W. (2d) 1.

*F. H. Stinchfield, Floyd E. Nelson, Stinchfield, Mackall, Crounse & Moore,* and *John M. Palmer,* for appellant.

*Streissguth & Gislason, Leonard, Street & Deinard,* and *Hyman Edelman,* for respondents.

*O'Brien, Horn, Stringer & Seymour, amici curiae.*

HENRY M. GALLAGHER, CHIEF JUSTICE.

This case comes here on appeal from a judgment for the plaintiffs as executors of the estate of Ruth Chase Donaldson, deceased. She originally brought the action but died after this appeal, and the executors were substituted in this court. She will hereinafter be referred to as the plaintiff. The action was brought in tort to recover as damages the purchase price of unregistered securities sold in Minnesota to plaintiff by defendant, a New York corporation, in August 1929, in alleged violation of the securities law of this state (Mason St. 1927, § 3996-4) which required their registration. It

also sought recovery on the ground of deceit based on misrepresentation, but, in view of our disposition of the case, we need not consider that phase of the case.

On the trial below the court found in favor of plaintiff on the basis of a violation of the statute, holding as against the defendant's plea of the statute of limitations that the statute had been tolled by defendant's withdrawal from the state on June 30, 1931. It therefore did not make findings on the deceit issue. On appeal, this court held that the general six-year statute had run against plaintiff because, notwithstanding the withdrawal of defendant from this state, service of summons could at all times have been made either on the secretary of state or the commissioner of securities as defendant's agents to receive service. The case then went back for findings on the deceit issue, which were in favor of plaintiff. Pomeroy v. National City Co. 209 Minn. 155, 296 N. W. 513, 133 A. L. R. 766; Donaldson v. Chase Securities Corp. 209 Minn. 165, 296 N. W. 518.

The securities sold to plaintiff were eight shares of the combined or consolidated stock of the Chase National Bank and of the defendant, which, by contract, could not be sold or disposed of separately. They are sometimes referred to as "Chase units." These shares had been combined in 1917 and were at one time listed on the New York Stock Exchange, but in January 1928 were delisted so that stock of the defendant securities corporation was not exempted by the terms of our securities act from registration here. Shortly after the delisting, defendant opened an office in Minneapolis and commenced the sale of the combined stocks. The sale to plaintiff was made by a duly authorized agent of defendant. The defendant was licensed as a corporation to do business in this state and had irrevocably appointed the commissioner of securities as its agent to receive service. After the crash of 1929 it withdrew from the state, at the same time appointing the secretary of state its agent to receive service in any action arising out of transactions which took place in this state while it was licensed to do business here.

The opinions of this court were filed on January 10, 1941, while the legislature was in session. In April of that year, by L. 1941, c. 547, § 18 (Minn. St. 1941, § 80.26 [Mason St. 1941 Supp. § 3996-24]), the legislature for the first time enacted a specific limitation upon actions based upon unlawful sales of securities, or deceit in connection therewith, and fixed six years from the date of delivery of the securities as the time within which action for violation of the statute or deceit must be brought. This section of the statute reads as follows:

"No action shall be maintained for relief upon a sale of securities made in violation of any of the provisions of this act, or upon a sale of securities made in violation of any of the provisions of a registration thereof under this act, or for failure to disclose that the sale thereof was made in violation of any of the provisions of this act or in violation of any of the provisions of a registration thereof under this act, or upon any representation with respect to the registration or nonregistration of the security claimed to be implied from any such sale, unless commenced within six years after the date on which said securities were delivered to the purchaser pursuant to such sale, provided that if, prior to the effective date of this section, more than five years shall have elapsed from the date of such delivery, then such action may be brought within a period of one year following such effective date."

It is the proviso which presents what we regard as the controlling questions in this case. (1) Did the legislature intend by this proviso to lift the bar of the statute where the general six-year limitation had already run? (2) If it intended to lift the bar, did it have the constitutional power to do so? (3) If these two questions be answered in the affirmative, was it the intent to include actions already pending?

■ It is quite obvious that at the time the securities were sold they were required by our law to be registered. The fact that a share of bank stock immune from registration was inseparably joined with stock which was nonimmune from registration for sale

and transfer purposes would not immunize the corporate stock required to be registered. No authority or logic is necessary to sustain that holding. But see Commr. of Banks v. Chase Securities Corp. 298 Mass. 285, 10 N. E. (2d) 472.

■ Since the stock was not registered the plaintiff is entitled to recover the purchase price unless barred by the statute of limitations. Vercellini v. U. S. I. Realty Co. 158 Minn. 72, 196 N. W. 672. The action is in tort. Drees v. Minnesota Petroleum Co. 189 Minn. 608, 611, 250 N. W. 563, 565.

■ The plain language of the proviso authorizes the bringing of all causes where the delivery of the stock had been made more than five years before the effective date of the limitation, if brought within one year from the effective date of the section, whether more than six years had elapsed since delivery or not; but it is the contention of the defendant that it should be interpreted as if it read "more than five years *and less than six years* shall have elapsed," etc.

The legislature acted promptly after our first opinion was filed. The inference is plain that it was dissatisfied with the law as laid down in that opinion and regarded it as unjust to the numerous plaintiffs who had bought this stock and had cases pending or had causes of action which would not be outlawed if the time subsequent to withdrawal from the state should be regarded as tolling the statute, as had been held in the federal court. City Co. of New York v. Stern (8 Cir.) 110 F. (2d) 601.

That it had all the cases similar to that at bar in mind can hardly be questioned, since in the general tenor of the section every aspect of them was covered. It was well known that a multitude of sales of this and other unregistered stock had been made in this state shortly before the 1929 crash. The evidence in this case shows about 500 sales of Chase units in Minnesota by this defendant in 1929. The legislature must have known that the great bulk of the violations of the statute had occurred prior to the crash and that few, if any, had occurred afterwards. As heretofore stated, defendant effected its withdrawal from the state in 1931. In the National City case (Pomeroy v. National City Co. 209 Minn. 155, 296

N. W. 513, 133 A. L. R. 766), the withdrawal was effected in 1934. If the clause in the proviso relating to causes arising more than five years previously were to be interpreted as defendant contends, it would apply to few, if any, cases. Causes of action for such violations were not distinguished from those in deceit which under the prior law may or may not have accrued more than six years prior to the effective date of the act. It is a rule of construction that provisos are limitations rather than extensions of legislative provisions (Minn. St. 1941, § 645.19), but all rules must yield to obvious legislative purpose; and where, as here, that purpose is expressed in clear language without qualification and the circumstances under which the law was enacted support the indicated purpose, we look to the intent expressed, even if it is in a proviso when it should have been expressed without the use of the word "provided." Legislatures have habitually ignored the appropriate limitations of provisos (even those which they have themselves prescribed) and have used them to extend the scope of acts. When their purpose is clear, we are bound to give effect to it. State ex rel. Town of Marine v. Browne, 56 Minn. 269, 273, 57 N. W. 659. We regard the proviso here under consideration as lifting the bar of the general six-year limitation.

■ It is the contention of defendant that the lifting of the bar of the statute in this case is a violation of the due process clauses of the state and federal constitutions. The leading case cited by plaintiff in support of the legislature's constitutional power to lift the bar is Campbell v. Holt, 115 U. S. 620, 6 S. Ct. 209, 29 L. ed. 483, in which the Supreme Court drew the distinction between two kinds of statutes of limitations, those that prescribe a limit of time within which adverse possession of property may be challenged, and those where time merely bars the plaintiff's remedy if the defendant chooses to rely on the bar. In the first class of cases something more occurs than the mere passage of time. The adverse holder has possession and claims title adversely to the record owner and thereby creates a vested right in himself which after the lapse of

the time fixed by statute cannot be taken away from him against his will without violation of due process.

In the second class of cases the passage of time creates no vested right in the exemption from the remedy. As said in Smart v. Baugh, 3 J. J. Mar. (Ky.) 364, 366, 367, cited with approval in Campbell v. Holt, *supra:*

"* * * Time does not pay a debt; but time may vest a right to property. * * * The statute of limitations only disqualifies the plaintiff to recover his debt by suit, if the defendant rely on time in his plea. It is a personal privilege, accorded by the law for reasons of public expediency."

In Campbell v. Holt, the Supreme Court held that a statute which applied merely to the remedy did not vest such a right in the defendant that the legislature or, in that case, the constitution of the state of Texas could not lift the bar of the limitation and thereby revive the cause. Strictly speaking, it is not a revival of the cause in the technical sense of that term as used in connection with abatement, but merely a lifting of the bar against the remedy.

In Kipp v. Johnson, 31 Minn. 360, 363, 17 N. W. 957, 959, this court, speaking through Mr. Justice Mitchell, said, "No man has a vested right to a mere remedy, or in an exemption from it." In that case the distinction subsequently recognized in Campbell v. Holt was stated with approval. This court said (31 Minn. 362, 17 N. W. 958):

"But what are often indiscriminately called statutes of limitation consist of two distinct classes: *First,* statutes of limitation, properly so called, where the prescription operates as the foundation of title to property in possession. The lapse of time limited by such statutes not only bars the remedy, but *extinguishes the right,* and vests a perfect title in the adverse holder. Stocker v. Berny, 1 Ld. Raym. 741; Leffingwell v. Warren, 2 Black, 599, 605; Buller, Nisi Prius, 103. The *second* class are those which merely take away or suspend certain remedies or forms of action, but leave the property rights of the parties unaffected. This last class

is rather an exemption from the servitude of certain forms of action than a means of the acquisition of title. In such a case, the legislature would have a perfect right to restore the remedy already barred, because it would not take away any vested rights of property."

It is true that in Kipp v. Johnson the court considered that the plaintiff had another remedy that had not been barred by the statute which had been repealed, but we regard the court's statement of the law as quoted above as announcing the sound and logical rule even if there be no other remedy. In House v. Carr, 185 N. Y. 453, 78 N. E. 171, 172, 6 L.R.A.(N.S.) 510, 113 A. S. R. 936, 7 Ann. Cas. 185, the court said:

"It must be borne in mind that the Statute of Limitations in this state never pays or discharges a debt, but only affects the remedy. It would be within the constitutional power of the legislature to repeal the Statute of Limitations and revive claims, the enforcement of which have been barred by the statute for a generation."

We do not follow the logic of such cases as Eingartner v. Illinois Steel Co. 103 Wis. 373, 79 N. W. 433, 74 A. S. R. 871, and State v. C. & N. W. Ry. Co. 132 Wis. 345, 112 N. W. 515, or the Illinois cases which regard the running of the statute as paying the debt.

We have been cited to no case where we have drawn any distinction between our interpretation of the due process clause in our state constitution and the interpretation given to the due process clause of the federal constitution by the Supreme Court of the United States. We do not find that Campbell v. Holt has been reversed or reconsidered, and we regard it as sound law; and, certainly, so far as the federal constitution is concerned, it is binding on this court until reversed by the Supreme Court.

Statutes of limitation which only bar the recovery of a debt or damages for tort are a matter of legislative public policy or expediency and may be changed as legislative wisdom dictates. The bar of such statutes may be lifted without violating the due process clauses of either the state or federal constitutions. See also Mc-

Eldowney v. Wyatt, 44 W. Va. 711, 30 S. E. 239, 45 L. R. A. 609; Orman v. Van Arsdell, 12 N. M. 344, 78 P. 48, 67 L. R. A. 438.

We hold that the legislature did not violate the constitution by lifting the bar of the statute as applied to this case.

The case at bar is to be distinguished from a third class of cases where a cause of action is created by statute, such as Lord Campbell's Act, the Interstate Commerce Act, or the Federal Employers Liability Act, and the same statute prescribes a period of limitation within which the cause must be brought. The weight of authority in such cases is that the period of limitation is a part of the cause of action, and if it is not brought within the time specified it may not be revived. Negaubauer v. G. N. Ry. Co. 92 Minn. 184, 99 N. W. 620, 104 A. S. R. 674, 2 Ann. Cas. 150; Kannellos v. G. N. Ry. Co. 151 Minn. 157, 186 N. W. 389; Danzer & Co. Inc. v. Gulf & S. I. R. Co. 268 U. S. 633, 45 S. Ct. 612, 69 L. ed. 1126.

■ Does the proviso apply to cases already pending? We think it does, even though it was passed subsequent to a determination by this court that the cause was barred. On this point we can do no better than to quote from Robinson v. Robins Dry Dock & Repair Co. 238 N. Y. 271, 281, 144 N. E. 579, 582, 36 A. L. R. 1310, 1315:

"* * * There is some conflict of decision in the various jurisdictions as to whether a case should be determined according to the law in effect when the judgment was rendered in the lower court or according to the law in effect at the time the cause was disposed of on appeal, but both reason and the weight of authority seem to point to the view that where a statute which is clearly intended to be retroactive and to apply to pending litigation is enacted after judgment and pending appeal, the appellate court may dispose of the case in accordance with the law as changed by the statute. We have already pointed out that in the case of Danforth v. Groton Water Co. [178 Mass. 472, 86 A. S. R. 495, 59 N. E. 1033], the Massachusetts Supreme Court upon reargument reversed a judgment of the lower court which was correct when rendered because pending the appeal the bar of the earlier statute was repealed.

'It is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.' (U. S. v. *Schooner Peggy,* 1 Cranch, 103 [2 L. ed. 49]. See, also, Dinsmore v. Southern Express Co., 183 U. S. 115 [22 S. Ct. 45, 46 L. ed. 111]; Un. Pac. R. R. v. Snow, 231 U. S. 204 [34 S. Ct. 104, 58 L. ed. 184])."

Since the evidence is compelling that defendant sold plaintiff unregistered stock in violation of the statute, she is entitled to recover the purchase price.

Judgment affirmed.

